ACME LUMBER CO. v. SWANSTON.

1. MECHANICS' LIENS—MATERIALMEN—DATE OF FURNISHING LAST MATERIAL—EVIDENCE—SUFFICIENCY.

In a bill to enforce a lien under the provisions of the mechanics' lien law (3 Comp. Laws 1915, § 14796), for material furnished, evidence *held*, sufficient to support the finding of the court below that the lien was filed within 60 days of the date of furnishing the last of the material, as required by section 14800.

2. SAME—MORTGAGEE AUTHORIZED TO MAKE PAYMENTS—AGENT OF OWNER—SWORN STATEMENTS.

Where the owner of a building under construction mortgaged the property and authorized the mortgagee to make payments on the contract out of the proceeds of such loan, and he thereafter made all payments, securing from the contractor the sworn statements provided for in 3 Comp. Laws 1915, § 14799, in making such payments and in securing such statements the mortgagee was the agent of the owner within the meaning of said section.

214—Mich.—36.

3. SAME—NOTICE BY MATERIALMAN—DUTY OF OWNER OR AGENT
TO INQUIRE.
   A notice caused to be served on the owner by a material-
   man that it was furnishing material to the contractor, as
   provided by 3 Comp. Laws 1915, § 14796, imposed on the
   owner, and the mortgagee as his agent, the duty to see
   that said materialman was paid before paying any money
   to the contractor.

4. SAME—EVIDENCE—SUFFICIENCY.
   Evidence *held*, sufficient to justify the finding of the court
   below that said notice was served.

5. SAME—AMOUNT OWING MATERIALMAN—EVIDENCE—SUFFICIENCY.
   Decree for plaintiff for the full amount of its claim, *held*,
   justified by the record; there being insufficient evidence
   to support owner's claim for deduction on account of
   installing hot air furnaces rather than steam.

Appeal from Wayne; Mandell (Henry A.), J. Sub-
mitted April 28, 1921. (Docket No. 82.) Decided
June 6, 1921.

Bill by the Acme Lumber Company against Hugh
Swanston and others to enforce a mechanic's lien.
From a decree for plaintiff, defendant Swanston ap-
peals. Affirmed.

*Edmund E. Shepherd,* for plaintiff.

*C. H. Lehman* and *G. M. Lehman,* for appellant.

SHARPE, J. The plaintiff seeks to enforce a lien,
under the provisions of 3 Comp. Laws 1915, § 14796
*et seq.,* for material furnished Clayton M. Diebler, a
contractor, in the erection for defendant Swanston
of a two-family flat building in Detroit. A statement
of lien was filed on August 7, 1917, in which it is
stated that the last of the material was furnished
on the 11th day of June, 1917. Diebler abandoned
the building before completion but, as he claims, after

all the material furnished by plaintiff had been used. Plaintiff had decree for $1,641 and interest, amounting in all to $1,907.66, from which the defendant Swanston appeals. We will consider the questions raised by defendant's counsel in the order discussed in their brief.

1. It is claimed that the statement of lien was not filed within 60 days after the date when the last of the material was furnished, as required by section 14800. The bill of complaint was sworn to by an officer of the plaintiff company. Section 14805 provides that—

"All bills sworn to shall be evidence of the matters therein charged, unless denied by answer under oath."

Defendant's answer was not sworn to. An answer on oath, however, was expressly waived in the bill. In the opinion filed, the trial court said:

"The bill of complaint has been offered in evidence, and it, with the proofs offered in the case, fully establish the fact that the material was furnished in time to establish a lien."

While the proof is not of that satisfactory character to be desired, owing somewhat to the loss by fire of the contractor's books and papers, we think it fairly establishes that the last of such material was furnished on June 11, 1917. The statement of lien was filed on August 7, 1917, within 60 days thereafter.

2. It appears that while the work was progressing the defendant Swanston mortgaged the property in question to the defendant Vogt and authorized him to make payments on the contract out of the proceeds of such loan, and that thereafter all payments were made by Vogt. At the time of making such payments, Vogt secured from Diebler the sworn statements provided for in section 14799. In securing such statements and making payments, Vogt was the

agent of Swanston within the meaning of this section. The first statement listed plaintiff as having furnished material to the amount of $800, but its name did not appear in any subsequent one.   The defense that Swanston is relieved by requiring such statement and making payments pursuant thereto is answered by plaintiff with the claim that it caused a notice that it was furnishing material to the contractor to be served on Swanston, as provided for in section 14796. This notice, if served, imposed the duty on Swanston and Vogt as his agent to see to it that plaintiff was paid before paying any money to Diebler, as it is admitted was done.   There is much dispute whether or not this notice was served.   Swanston denies having received it.   One Wagner, an employee of plaintiff, testified that he served it.   Were there no other testimony bearing on the question, there would be force in the contention that the burden of proof resting on plaintiff is not sustained.   But Diebler and his wife and plaintiff's secretary, Gustav Scheurman, all testified that Swanston told them he had received such a notice.   We think the trial court was fully justified in finding that the notice was served.

3. Defendant Swanston strenuously insists that "plaintiff under any circumstances cannot recover the full amount of its claim."   The contract price, of which the plaintiff had knowledge, was $4,500.   Swanston contends that Mr. Vogt as his agent paid to laborers and materialmen under the sworn statements $1,658.33; that it cost to complete the building, after Diebler abandoned the job, $1,077.60; that Swanston himself furnished the chandeliers, which were included in the contract, at a cost of $87; that hot air furnaces were installed, costing $355 less than the steam plant contracted for, and this should be deducted from the contract price.   This would leave but $1,322.07.

Under the decree, plaintiff was given a lien in the sum of $1,641 and interest.

We think it a sufficient answer to this claim to say that there is no competent evidence on which to base the allowance of $355 for difference in the cost of the heating plants. The contract, a copy of which is in the record, contains no reference to heating plants. It provides for construction "according to the plans, drawings, details, and specifications." These were not produced. As to this item, the only specific testimony offered is that of Mr. Vogt, who said:

"I testified that the original house was to have a steam plant. I later put in hot air furnaces, which cost $245. A steam plant at that time would have cost about $600. Instead of that I put in a hot air furnace at $245."

If we eliminate this item, there would be a balance of the contract price, for which plaintiff might claim a lien, in excess of the sum decreed.

After a careful examination of the entire record, we are of the opinion that the decree rendered was justified by the proofs. It is affirmed, with costs to plaintiff.

STEERE, C. J., and WIEST, FELLOWS, STONE, CLARK, and BIRD, JJ., concurred. MOORE, J., did not sit.